1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SAAHDI COLEMAN,                          No.  2:21-cv-00625-TLN-EFB (PC)

12            Plaintiff,

13       v.                                   ORDER

14   CALIFORNIA DEPARTMENT OF
     CORRECTIONS, et al.,
15
              Defendants.
16

17

18       Plaintiff is a state prisoner proceeding without counsel in this action brought under 42

19   U.S.C. § 1983.  On May 12, 2022, the court screened plaintiff's amended complaint under 28

20   U.S.C. § 1915A and found that plaintiff's complaint contained significant portions that were

21   illegible and scattershot allegations in violation of Federal Rule of Civil Procedure 8.  ECF No.

22   25.  The court granted plaintiff leave to file a second amended complaint, but plaintiff failed to do

23   so within the time granted by the court.  Thus, on June 16, 2022, the court recommended that the

24   district judge dismiss the case.  ECF No. 26.  However, that same day, plaintiff filed a motion

25   seeking additional time to file the second amended complaint.  ECF No. 27.  Consequently, the

26   court held the recommendation of dismissal in abeyance to allow plaintiff additional time.  ECF

27   No. 28.  Plaintiff filed his second amended complaint on August 10, 2022, which is now before

28   the court for screening.

                                             1

1    **I.      Screening Requirement**

2        Federal courts must engage in a preliminary screening of cases in which prisoners seek

3    redress from a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

4    § 1915A(a).  The court must identify cognizable claims or dismiss the complaint, or any portion

5    of the complaint, if the complaint "is frivolous, malicious, or fails to state a claim upon which

6    relief may be granted," or "seeks monetary relief from a defendant who is immune from such

7    relief."  *Id.* § 1915A(b).

8    **II.     Screening Order**

9        Plaintiff pursues claims based on the Eighth Amendment and the First Amendment to the

10   U.S. Constitution against fifteen defendants: (1) the California Department of Corrections and

11   Rehabilitation; (2) Jeff Lynch, warden at California State Prison – Sacramento (CSP-Sac) and

12   member of the institutional classification committees concerning plaintiff's housing; (3) Dr.

13   Morgan, head of the Short-Term Restricted Housing Unit (STRH Unit) at CSP-Sac and member

14   of the institutional classification committees concerning plaintiff's housing; (4) Thompson, STRH

15   Unit psychologist at CSP-Sac; (5) Collinsworth, correctional sergeant at CSP-Sac and member of

16   the institutional classification committees concerning plaintiff's housing; (6) S. Manson,

17   correctional sergeant at CSP-Sac; (7) Tyler, registered nurse on the CSP-Sac STRH Unit; (8) J.

18   Stewart, member of the institutional classification committees concerning plaintiff's housing at

19   CSP-Sac; (9) E. Jones, member of the institutional classification committees concerning

20   plaintiff's housing at CSP-Sac; (10) B. Frericks, correctional officer on the STRH Unit; (11) B.

21   Nguyen, correctional officer on the STRH Unit; (12) Burkheart, correctional officer on the STRH

22   Unit; (13) J. Kelly, correctional officer on the STRH Unit; (14) J. Frederick, correctional

23   counselor on the STRH Unit; and (15) D. Contreras, correctional counselor on the STRH Unit

24   and member of the institutional classification committees concerning plaintiff's housing.  ECF

25   No. 30 at 1-2.  Plaintiff alleges that defendants subjected him to unconstitutionally-lengthy

26   solitary confinement for 10 months in the CSP-Sac STRH Unit and in unconstitutional conditions

27   of confinement, and then retaliated against him for grieving those conditions.  According to

28   plaintiff, the defendants participated in an "STRH brotherhood" that conspired to deprive him of

1    his constitutional rights and to cover up for one another.  It is not always clear from the second

2    amended complaint which claims plaintiff wishes to pursue against which defendants.  However,

3    after careful review, the court finds that plaintiff has stated potentially cognizable claims against

4    fourteen of the fifteen listed defendants, as follows.

5            The Eighth Amendment protects prisoners from inhumane methods of punishment and

6    from inhumane conditions of confinement.  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir.

7    2006).  Extreme deprivations are required to make out a conditions-of-confinement claim, and

8    only those deprivations denying the minimal civilized measure of life's necessities are

9    sufficiently grave to form the basis of an Eighth Amendment violation.  *Hudson v. McMillian*,

10   503 U.S. 1, 9 (1992).  "Prison officials have a duty to ensure that prisoners are provided adequate

11   shelter, food, clothing, sanitation, medical care, and personal safety."  *Johnson v. Lewis*, 217 F.3d

12   726, 731-32 (9th Cir. 2000) (quotations and citations omitted).

13           To state a claim for retaliation in violation of the First Amendment, a prisoner must allege

14   facts showing five elements: (1) that a state actor took some adverse action against him (2)

15   because of (3) his protected conduct, (4) that such action chilled his exercise of his First

16   Amendment rights, and (5) that the action did not reasonably advance a legitimate correctional

17   goal.  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).  The plaintiff need not allege

18   that his speech was actually inhibited or suppressed, but merely that the defendant's conduct was

19   such as would chill or silence a person of ordinary firmness from future First Amendment

20   activities.  *Id*. at 568-69.  Conduct protected by the First Amendment includes communications

21   that are "part of the grievance process."  *Brodheim v. Cry*, 584 F.3d 1262, 1271 n.4 (9th Cir.

22   2009).

23           Plaintiff alleges that an institutional classification committee consisting of defendants

24   Lynch, Stewart, Jones, Morgan, Frederick, Contreras, and Collinsworth transferred him to CSP-

25   Sac's STRH Unit on May 1, 2020.  These defendants allegedly elected to keep plaintiff confined

26   there at five successive committee meetings for a total period of 10 months, even though a

27   standing court order required his transfer out of the unit within 72 hours of May 6, 2020.

28   ////

1    According to plaintiff, staff on the STRH Unit "operated like an organized gang or

2    brotherhood" and retaliated against inmates who tried to report staff misconduct.  Members of

3    this "brotherhood" wore a "distinctive neck covering and wristband."  Plaintiff "witnessed

4    defendants Jeff Lynch, Dr. Morgan, J. Frederick, D. Contreras, J. Stewart, G. Jones, Sergeant

5    Collinsworth and Sergeant S. Manson giving out handshakes, arm punches, or back slaps after

6    [plaintiff] had just been attacked by defendant Tyler, or B. Freriks, or B. Nguyen or Burkheart."

7    Plaintiff alleges that he was denied clean clothes, underwear, warm showers, light,

8    warmth, necessary COVID-19 protective gear, and proper ventilation in the STRH Unit.  He

9    claims that the unit showers were filthy and that, despite the COVID-19 pandemic, defendants

10    Freriks, Nguyen, and Burkheart refused to disinfect recreational yard cages, telephones, or

11    showers.  Unspecified defendants "denied all sanitation and hygiene protocols" to plaintiff.

12    On June 10, 2020, plaintiff informed the defendants on the classification committee that

13    he was being denied clean clothes and bedding and that staff members were disregarding

14    COVID-19 safety protocols.  After the committee meeting, defendant Collinsworth pressed his

15    elbow into plaintiff's throat and said, "You're not in gen-pop anymore.  We don't tolerate whistle

16    blowers back here.  We deal with everything in house.  If you want to make it out of here in one

17    piece, I suggest you learn how to play by our rules, you are a guest in our house."  After this

18    confrontation, Collinsworth began housing inmates with severe mental illness on the same tier as

19    plaintiff "because he knew they would scream and bang on the doors all night so that I couldn't

20    sleep."  Other staff who wore the distinctive neck covering and wrist band of the brotherhood

21    began to make degrading comments to plaintiff during strip searches and depriving him of phone

22    calls, showers, and yard time.  When plaintiff asked Collinsworth to stop the ongoing harassment,

23    Collinsworth said, "This is just a small taste of the pain I can inflict on you in my house."

24    On June 22, 2020, plaintiff and other STRH unit inmates filed a group appeal against

25    Collinsworth and Manson regarding staff harassment and/or an incident in which defendant Tyler

26    (a nurse on the unit) coughed on plaintiff's cell door after stating that he thought he had been

27    exposed to COVID-19.  After submitting the appeal, the cells of the inmates were searched and

28    their property was destroyed while they were on the recreational yard.  Manson told the inmates,

4

"I know everything that goes on in my unit.  If you and your pals want to tell on me and my officers, I will make your stay back here a living hell."  According to plaintiff, Manson wore a distinctive neck covering and wristband of what plaintiff characterizes as the STRH brotherhood.

Plaintiff filed another grievance on August 20, 2020, concerning his belief that STRH staff operated like a gang to harass and intimidate inmates.  According to plaintiff, defendant Freriks then came to plaintiff's cell door wearing his STRH neck covering and told plaintiff that he had "fucked up this time and was a snitch bitch."  Freriks began to slam a metal rod on plaintiff's door during welfare checks to deprive plaintiff of rest and to make comments about plaintiff's genitals during strip searches that were audible to everyone on the tier.  Freriks also made loud comments about plaintiff's need for mental health care, which caused other inmates to taunt plaintiff as "weak" and "soft."  Allegedly, this conduct kept plaintiff from being open about his mental health needs for fear that staff and inmates would hear something to use against him.  Defendants Tyler, Burkheart, and Nguyen "all started to rile the inmate[s]" to taunt plaintiff when they came on the tier.  On September 21, 2020, plaintiff returned to his cell to find that it had been trashed, with pieces of the grievance littered on the floor.

Plaintiff reported to his mental health clinicians, defendants Thompson and Morgan, that Freriks had sexually harassed him by making comments about his genitals during a strip search.  He also reported it to defendants Lynch, Stewart, Jones, Frederick, Contreras, Collinsworth, and Manson.  Plaintiff filed a complaint with appeals coordinator defendant Kelly about the harassment.  But none of these defendants responded.  Rather, Kelly mis-used his position, providing unfiled inmate grievances to members of the STRH brotherhood so that they could retaliate.

On September 23, 2020, plaintiff submitted another grievance concerning the STRH brotherhood.  Thereafter, defendant Burkheart, who was sweating and coughing, refused to wear a face mask while escorting plaintiff to the recreation yard.  Burkheart referred to plaintiff as a snitch and told him to "worry about whose door is going to accidentally open while you're on the tier, instead of about that fake news."  Thereafter, plaintiff became sick with a headache, night chills, and loss of his sense of taste.  When plaintiff told Burkheart he was unwell, Burkheart told

1    plaintiff that "COVID-19 was 'fake news' and that he didn't have to wear a mask because he's an

2    American." Burkheart began to skip plaintiff for COVID testing and temperature checks, and

3    soon defendant Freriks and other STRH Unit staff followed suit. Plaintiff experienced two bouts

4    with COVID-like symptoms but was denied treatment.

5        Plaintiff continued to file grievances in October, November, and December 2020,

6    including appeals to the Chief Inmate Appeals Office. In these appeals, plaintiff complained of

7    the ongoing harassment, poor conditions, and retaliation in the STRH Unit. Plaintiff identified

8    defendants Nguyen, Freriks, Burkheart, Collinsworth, Manson, and Tyler as "key members of an

9    STRH organized gang." On January 31, 2021, Nguyen came to escort plaintiff to the shower.

10   When plaintiff requested that Nguyen – who appeared to be ill – wear a mask, Nguyen yanked

11   plaintiff out of the shower and took him to a shower with no hot water. Later, Nguyen provided

12   plaintiff with a "fake official looking CDCR document" labeled "Hurt feelings report." The

13   document identified plaintiff as a snitch. Nguyen told the inmates on the tier that "that's what

14   happens when you and your buddies file snitch-02s, deal with it."

15       Nguyen distributed the report among the inmates, who targeted plaintiff with human waste

16   on his way to the recreational yard due to his having been labeled a snitch. The negative effects

17   of the report continue to plague plaintiff and place his safety at risk.

18       For the limited purposes of screening under § 1915A and construed liberally, the second

19   amended complaint states potentially cognizable Eighth Amendment claims against defendants

20   Lynch, Morgan, Collinsworth, Manson, Tyler, Stewart, Jones, Frericks, Nguyen, Burkheart,

21   Kelly, Frederick, and Contreras. The second amended complaint also states potentially

22   cognizable First Amendment retaliation claims against defendants Collinsworth, Manson, Tyler,

23   Frericks, Nguyen, Burkheart, Kelly, and Frederick.

24       In addition, the Fourteenth Amendment provides a right that protects prisoners from some

25   disclosure of sensitive personal information. *Robinson v. Purcell*, No. 2:14-cv-0790 MCE AC P,

26   2019 U.S. Dist. LEXIS 49641, at *12 (E.D. Cal. Mar. 25, 2019); *see Norman-Bloodsaw v.*

27   *Lawrence Berkeley Lab.*, 135 F.3d 1260, 1269 (9th Cir. 1998). Plaintiff alleges that his STRH

28   Unit Clinician, defendant Thompson, conducted psychiatric appointments with him at his cell

1   door, which allowed staff and other inmates to hear sensitive personal information.  Plaintiff has

2   stated a potentially cognizable 14th Amendment claim against defendant Thompson.

3        The second amended complaint fails to state a viable claim against the California

4   Department of Corrections and Rehabilitation, because state agencies are immune from § 1983

5   liability under the 11th Amendment.  *Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir.

6   2009); *Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988) ("Under the eleventh

7   amendment, agencies of the state are immune from private damage actions or suits for injunctive

8   relief brought in federal court.").[1]

9        Plaintiff may choose to proceed only with the claims identified as cognizable by this

10  order.  Alternatively, the court will provide plaintiff with one final opportunity to amend his

11  complaint again to remedy his defective claim against CDCR or further clarify which claims he

12  wishes to pursue against which defendants.  He is cautioned that any amended complaint must

13  identify as a defendant only persons who personally participated in a substantial way in depriving

14  him of his constitutional rights.  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (a person

15  subjects another to the deprivation of a constitutional right if he does an act, participates in

16  another's act or omits to perform an act he is legally required to do that causes the alleged

17  deprivation).  Plaintiff may also include any allegations based on state law that are so closely to

18  his federal allegations that "the form the same case or controversy."  *See* 28 U.S.C. § 1367(a).

19       The third amended complaint must also contain a caption including the names of all

20  defendants.  Fed. R. Civ. P. 10(a).

21       Plaintiff may not change the nature of this suit by alleging new, unrelated claims.  *See*

22  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  Nor may he bring multiple, unrelated claims

23  against more than one defendant.  *Id.*

24

25       [1] A limited exception to the rule barring suit against states exists for suits against state officials, sued in their official capacity, for prospective injunctive relief.  *See Will v. Michigan

26  Dept. of State Police*, 491 U.S. 58, 71 n.10, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).  Thus, plaintiff may conceivably salvage his claim against CDCR by instead suing the head of CDCR in

27  her official capacity for prospective injunctive relief only.  *Coleman v. Cal. Dep't of Corr. & Rehab.*, No. CV 06-2606-JFW (PJW), 2009 U.S. Dist. LEXIS 131038, at *8-9 (C.D. Cal. Feb. 2,

28  2009).

1    **III.    Conclusion**

2        For the foregoing reasons, it is HEREBY ORDERED that:

3        1.  The findings and recommendations issued on June 16, 2022 (ECF No. 26) are hereby

4            VACATED;

5        2.  Plaintiff's second amended complaint (ECF No. 30) states, for screening purposes,

6            potentially cognizable claims as identified in this order against defendants Lynch,

7            Morgan, Thompson, Collinsworth, Manson, Tyler, Stewart, Jones, Freriks, Nguyen,

8            Burkheart, Kelly, Frederick, and Contreras.

9        3.  Plaintiff's claim against CDCR is dismissed with leave to amend within 30 days of service

10           of this order.  Plaintiff is not obligated to amend his complaint.

11       4.  Within thirty days, plaintiff shall return the notice below advising the court whether he

12           elects to proceed with the cognizable claims or file a third amended complaint.  If the

13           former option is selected and returned, the court will enter an order directing service on

14           defendants at that time;

15       5.  Failure to comply with any part of this this order may result in dismissal of this action.

16

17   DATED: December 21, 2022.

18                                               EDMUND F. BRENNAN
                                                 UNITED STATES MAGISTRATE JUDGE
19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                   FOR THE EASTERN DISTRICT OF CALIFORNIA

8    SAAHDI COLEMAN,                          No. 2:21-cv-00625-TLN-EFB (PC)

                     Plaintiff,
9

10         v.                                 NOTICE OF ELECTION

11   CALIFORNIA DEPARTMENT OF
     CORRECTIONS, et al.,

12                   Defendants.

13   In accordance with the court's Screening Order, plaintiff hereby elects to:

14

15         (1) _____    proceed only with the First Amendment, Eighth Amendment, and

16   Fourteenth Amendment claims identified in the court's second screening order against

17   defendants Lynch, Morgan, Thompson, Collinsworth, Manson, Tyler, Stewart, Jones,

18   Freriks, Nguyen, Burkheart, Kelly, Frederick, and Contreras;

19

20   OR

21         (2) _____    delay serving any defendant and file a third amended complaint.

22

23                                           _____

24                                                       Plaintiff

25   Dated:

26

27

28
                                            9