Saahdi Coleman, T-99368  
CSP-LAC, A1-136  
P.O. Box 4430  
Lancaster, CA 93539

**FILED**

JAN 30 2023

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

United States District Court
For the Eastern District of California

Saahdi Coleman

    Plaintiff

v.

California Department of Corr et. Al.,

    Respondent

Case No. 2:21-CV-00625-TLN-EFB

Amendments in Third Amended Complaint

---

| | |
|---|---|
| Page No. 1 | Changed heading – (1) CDCR to Kathleen Allison |
| | Changed heading – Second Amended Complaint to Third Amended Complaint |
| | Changed Defendants – CDCR to Kathleen Allison CDCR Secretary |
| Page No. 4 | Added B. Frericks, B. Nguyen, Burkheart, Collinsworth and Manson jointly and severally denied all sanitation protocols to me |
| Page No. 6 | Clarified each defendant Eight Amendment Claim is against |
| Page No. 11 | Clarified each defendant First Amendment Claim is against |
| Page No. 15 | Clarified the defendant Fourteenth Amendment claim is against |
| | Added claim for Injunctive Relief against Kathleen Allison as head of CDCR |

Respectfully Submitted



Saahdi Coleman

Saahdi Coleman, T-99368
CSP-LAC, Bldg. 1-136, Facility A
P.O. Box4430
Lancaster, CA 93539-4430

**In the United States District Court**
**For the Eastern District of California**

Saahdi Coleman

    Plaintiff

    v.

(1) Kathleen Allison.

(2) Jeff Lynch. (3) Dr. Morgan. (4) Thompson.

(5) Collinsworth. (6) S. Manson. (7) Tyler.

(8) J. Stewart. (9) G. Jones. (10) B. Freriks.

(11) B. Nguyen. (12) Burkheart. (13) J. Kelly.

(14) J. Frederick. (15) D. Contreras.

    Defendants

**Case No.** 2:21-CV-00625-TLN-EFB

**Civil Rights Complaint**

**By Prisoner and Demand for Jury Trial**

**Third Amended Complaint**

### A. Jurisdiction
1. This court has jurisdiction over this action pursuant to 28 U.S.C. SS 1343Ca: 42 U.S.C. SS1983
2. Institution/City where violation occurred: California State Prison – Sacramento

### B. Defendants
1. **Name**: Kathleen Allison. **Employed as**: CDCR Secretary. **At**: All institutions.
2. **Name**: Jeff Lynch. **Employed as**: Warden (5th Committee Member). **At**: CSP-Sacramento (STRH Unit).
3. **Name**: Dr. Morgan. **Employed as**: Head of Mental Health Clinician (STRH Unit). **At**: CSP-Sacramento (STRH Unit).
4. **Name**: Clinician Thompson. **Employed as**: Psychologist (STRH Unit). **At**: CSP-Sacramento (STRH Unit).
5. **Name**: Collinsworth. **Employed as**: Correctional Sergeant (STRH Unit). **At**: CSP-Sacramento (STRH Unit).
6. **Name**: S. Manson. **Employed as**: Correctional Sergeant (STRH Unit). **At**: CSP-Sacramento (STRH Unit).
7. **Name**: Tyler. **Employed as**: Registered Nurse (STRH Unit). **At**: CSP-Sacramento (STRH Unit).

8. **Name:** J. Stewart. **Employed as:** STRH Committee Member. At: CSP-Sacramento STRH Unit).
9. **Name:** E. Jones. Employed as: STRH Committee Member. At: CSP-Sacramento (STRH Unit).
10. **Name:** B. Fericks. **Employed as:** Correctional Officer (STRH Unit). At: CSP-Sacramento STRH Unit).
11. **Name:** B. Nguyen. **Employed as:** Correctional Officer (STRH Unit). At: CSP-Sacramento (STRH Unit).
12. **Name:** Burkheart. **Employed as:** Correctional Officer (STRH Unit). At: CSP-Sacramento (STRH Unit).
13. **Name:** J. Kelly. **Employed as:** Correctional Officer (STRH Unit). At: CSP-Sacramento (STRH Unit).
14. **Name:** J. Frederick. **Employed as:** Correctional Counselor (STRH Unit). At: CSP-Sacramento (STRH Unit).
15. **Name:** D. Contreras. **Employed as:** Correctional Counselor (STRH Unit). At: CSP-Sacramento (STRH Unit).

## C. Previous Lawsuit

1. Have you filed any other lawsuits while you were a prisoner?   **Yes**

2. If yes, how many lawsuits have you filed?   **7**   Describe previous lawsuits:

   A. First prior lawsuit:
      1. Parties Coleman v. CDCR
      2. Court and Case number: CV-0836-AW1-WMW-P/Eastern District
      3. Result: Dismissed

   B. Second prior lawsuit:
      1. Parties Coleman v. CDCR
      2. Court and Case number: CV-00335-DLB-(PC)/Eastern District
      3. Result: Dismissed

   C. Third prior lawsuit:
      1. Parties Coleman v. CDCR
      2. Court and Case number: 2:15-CV-01434-EFB/Eastern District
      3. Result: Settlement, (2) Cases consolidated and settled $4000.00 in damages

- 2 -

## D. Cause of Action

## Claim I

**1. State the Constitutional or other Federal Civil Right that was violated:** 8th Amendment's Prohibition against cruel and unusual punishment.

**2. Claim I: Cruel and unusual punishment** (Defendants acted under color of state law).

**3. Supporting Facts:** In response to a Federal Court order in the class action Coleman V. Newsome, CDCR created new specialized housing units for prisoners with mental health diagnosis placed in segregated housing. The purpose of these housing units was to protect mental health prisoners and to provide them with more services. On May 1, 2020, I was housed in the specialized "short-term restricted housing" Unit STRH because I am a participant in the mental health program, and staff had received information that I was going to be the victim of a violent assault. The STRH Unit is set apart from all other general population units allowing STRH staff to operate with complete autonomy in the prison setting. The moment I was housed in the STRH Unit I was completely isolated and dependent on STRH Staff for everything.

**4. Injury:** Illegal long term solitary confinement. Exposure to inhumane and unconstitutional living conditions. Psychological torture. Unnecessary pain. Headaches and permanent discoloration of skin. Decline in mental health and excessive force (elbow to my throat).

**5. Administrative Remedies:**

    a. Are there administrative remedies available at your institution? **Yes**

    b. Did you submit a request for administrative relief on Claim I? **Yes**

    c. Did you appeal your request for relief on Claim I to the highest level? **Yes** (attempted)

## (Claim I Supporting Facts continued)

Based upon the standing Federal Court order and CCR Title-15, the conditions of the specialized STRH Unit were supposed to approximate those of the general population. There was an expectation that I would have basic necessities, that STRH staff would follow safety protocols, that I would have meaningful access to mental health treatment and that I would only be housed in the STRH Unit for a short period of time. I was housed in the STRH Unit for a continuous period of approximately 10 months. What I endured in the STRH Unit was atypical to that of any other inmates throughout the prison system. In the STRH Unit the defendants operated like an organized gang or brotherhood. There was a strict code of silence, and solidarity with each other against prisoners housed within the STRH Unit. Anytime a prisoner attempted to report staff misconduct in the STRH Unit a group of STRH staff members were deployed to inflict harm on that inmate.

The living conditions in the STRH Unit were horrible. There was no weekly sheet exchange, so I was forced to sleep on soiled sheets for months at a time. I wore the same mandatory dirty ASU jumpsuit the entire time I was housed in STRH. I was never allowed to exchange my blanket and I was denied access to clean under clothing for months at a time. 14 out of 16 showers had only freezing cold water. The in-cell ventilation system was broken, and my light fixture was broken for almost the entire time I was housed in the STRH Unit. The shower areas were littered with dirty under clothes, socks, trash, hair, Band-Aids, and there was usually blood on the floors and walls. Flooding from backed up drains or plastic gloves discarded by STRH staff. Defendants B. Freriks, B. Nguyen, and Burkheart refused to disinfect the recreational yard cages or telephones or showers between uses. During my confinement in the STRH Unit we were at the height of the Covid-19 pandemic and the defendants B. Fericks, B. Nguyen, Burkheart, Collinsworth, and Manson jointly and severely denied all sanitation and hygiene protocols to me.

For 10 months I had to endure living without the basic necessities. I sat in a cell in the dark unable to read or write to my family day after day after day. I suffered a permanent discoloration to my skin from the filth I had to live in. Headaches, pain from sitting in freezing cold temperatures for hours and the psychological torture of being in solitary confinement long term. The psychological torture of believing you might contract a deadly disease and die because STRH staff refuse to provide mandatory protective gear or follow the sanitation and safety protocols to keep you safe. The psychological torture of being denied meaningful access to mental health or medical treatment.

These are the conditions I endured in the specialized short term housing unit long term. Under the standing Federal Court order and CCR3335(2)(A) "Any case designated as (NDS) and included in the (mhsds) shall be transferred to an appropriate institution within 72 hours of initial designation." Defendants Jeff Lynch, J. Stewart,

-4-

## (Claim I Supporting Facts continued)

G. Jones, Dr. Morgan, J. Frederick, D. Contreras, and Sergeant Collinsworth served as my classification committee. They are the parties who are responsible for retaining me in the STRH Unit long term. On May 6, 2020, the defendants designated me non-disciplinary status (NDS) and noted that I was a participant in the (mhsds) program. Under a standing Federal Court order and CCR3335(2)(A) they had 72 hours from that date to transfer me out of the STRH Unit. There is no excuse for what I endured. The defendants transferred inmates out of the STRH Unit who were housed there for murder, attempted murder, riots, battery, and distribution of drugs while I was forced to remain in solitary confinement for non-disciplinary reasons. It wasn't a mistake. I saw the defendants a minimum of 5 separate times. Each time I showed them in the Title 15 that my continued housing in solitary confinement was illegal. I have documentary proof that I alerted the defendants of the standing Federal Court order and that they knowingly chose to violate the standing Federal Court order and retain me in solitary confinement long term.

There are a total of 15 named defendants in this action. I believe the nexus between the defendant's actions and the constitutional violations complained of in this complaint are that the defendants acted in concert with each other to deprive me of or violate those rights. I believe the named defendants acted as an organized gang within the STRH Unit. I refer to them as the "brotherhood" because it is the only term that describes their close-knit relationship to each other. I was able to identify members of the STRH brotherhood by the distinctive neck covering and wristbands they wore and by statements, admissions, and observation over a 10-month period.

During my time in solitary confinement, I was housed on E-row. I discovered that if I wedged myself against the door. I could see down the tier through a small slit in the door and I was able to see down the tier by placing a piece of mirror on my door window. This is how I was able to identify STRH brotherhood members. I was able to observe the named defendants congregating with each other without their knowledge. I witnessed the defendants being awarded their distinctive brother hood attire. I witnessed their comradery. The fist bumps, the hugs, the conspiratorial laughter, and intimate touches. It is also how I know the defendants operated as a collective.

When defendants Tyler, B. Freriks, B. Nguyen, or Burkheart decided to retaliate against me for reporting misconduct, there was always another STRH brotherhood member present. They would stand just outside of the view offered by my front window unaware that I could observe them through the slit in the door or the mirrors I put in place. I witnessed defendants Jeff Lynch, Dr. Morgan, J. Frederick, D. Contreras, J. Stewart, G. Jones, Sergeant Collinsworth and Sergeant S. Manson giving out handshakes, arm punches, or back slaps after I had just

### (Claim I Supporting Facts continued)

been attacked by defendant Tyler, or B. Frerik, or B. Nguyen or Burkheart. The defendants acted as a unit with full support and approval from each other.

If I wanted to file a staff misconduct complaint or inmate appeal, I had to file it through an STRH brotherhood member because I was denied access to the secured locked inmate appeal boxes which are standard on general population facilities. STRH staff outside of the brotherhood refused to even collect inmate appeals or complaints. When I reported misconduct to my assigned clinician defendant Thompson and other defendants, and they failed to help me, I was lost. I didn't know what to do, and when the attacks from the defendants got worse and I couldn't get the mental health treatment I needed, I contemplated committing suicide. Because of the actions of the defendants. I'm still suffering today. I've been placed in a STRH Unit at another institution (CSP-COR) for the past 6 months living under unconstitutional conditions because people want to murder me, all because of the actions of the STRH brotherhood.

I believe the facts alleged in this claim state cognizable Eight Amendment claims jointly and severally against STRH Brotherhood defendants Lynch, Morgan, Collinsworth, Manson, Tyler, Stewart, Jones, Frericks, Nguyen, Burkheart, Kelly, Frederick, and Contreras for subjecting me to unconstitutionally lengthy solitary confinement under unconstitutional conditions of confinement for non-disciplinary reasons.

## Claim II

**1. State the Constitutional or other Federal Civil right that was violated:** 1st Amendment's Prohibition against retaliation.

**2. Claim II: Retaliation** (Defendants acted under color of State Law).

**3. Supporting Facts:** On June 10, 2020, Defendants Jeff Lynch, Dr. Morgan, J. Frederick, and Sergeant Collinsworth made the decision to retain me in solitary confinement. I was given an opportunity to speak so I informed the defendants that based on a standing Federal Court order my continued housing in solitary confinement was illegal, that I was being denied access to clean clothes and bedding, that staff refused to follow Covid-19 safety protocols and that the staff members in charge of running the STRH Unit were failing to hold custody staff accountable. When I reported the misconduct to the committee members, I was not aware that defendant Sergeant Collinsworth was one of the heads of STRH Unit or that he was a key member of the STRH

**4. Injury:** Life placed at risk due to "Hurt feeling report", injured neck, assaulted with human waste. Covid-19 exposure, possible contraction of Covid-19, denied Covid-19 testing and/or treatment, denied mental health treatment, destroyed property, unnecessary pain and suffering, and sexual harassment.

**5. Administrative Remedies:**

    a. Are there administrative remedies available at your institution? **Yes**

    b. Did you submit a request for administrative relief on Claim II? **Yes**

    c. Did you appeal your request for relief on Claim II to the highest level? **Yes** (attempted)

**(Claim II Supporting Facts continued)**

brotherhood. After committee I was taken into a side room at the front of the STRH Unit instead of back to my cell by an officer wearing a distinctive brotherhood neck covering. A few minutes later Defendant Sergeant Collinsworth entered the room wearing the same neck covering, he pressed his elbow into my throat, and he said, "you are not in gen-pop anymore. We don't tolerate whistle blowers back here. we deal with everything in house. If you want to make it out of here in one piece, I suggest you learn how to play by our rules, you are a guest in our house."

After my confrontation with defendant Collinsworth my life turned into a living nightmare. Defendant Collinsworth started housing inmates with severe mental health issues on my tier because he knew they would scream and bang on the doors all night so that I couldn't sleep. Other STRH staff members who wore the distinctive neck covering and wristband started to make degrading comments towards me during strip searches, to discard their Covid-19 face coverings during escorts, and to regularly skip me for phone calls, showers, and recreational yard. I contacted defendant Sargent Collinsworth to ask him to stop the harassment and he told me, "This is just a small taste of the pain I can inflict on you in my house".

Several inmates witnessed staff members in the STRH harassing me, so on June 22, 2020, me and several other inmates housed on E-row filed a group inmate appeal against Defendants Sergeant Collinsworth and S. Manson. On June 29, 2020, the group appeal was returned unfiled. On June 29, 2020, we re-filed the group inmate appeal against Defendants Sergeant Collinsworth and S. Manson. The triggering event that made inmates on E-row willing to risk retaliation for filing complaints were the actions of Defendant Tyler, a brotherhood member. He had become so emboldened by the lack of accountability in the STRH Unit that he started openly putting our safety at risk. The prison issued a memorandum to inform the inmate population that 3 inmates who transferred from San Quentin State Prison to CSP-SAC had tested positive for Covid-19. While delivering a medical device to an inmate on E-row Defendant Tyler stated, "I think I was exposed to Covid, but I can't go home until I test positive. That's the policy." He still refused to wear a face covering.

The inmate told Defendant Tyler, "to get away from his door." When Defendant Tyler saw me standing at the door, he said to me, "for some hardcore criminals these guys are scary, huh?" He then walked up to my door, I immediately noticed the distinctive brotherhood neck covering around his neck and he made a coughing sound and gestured like he was coughing on my door. after this incident he obstructed my access to medical treatment.

### (Claim II Supporting Facts continued)

On July 22, 2020, Defendant S. Manson responded to our group inmate appeal. While we were at recreational yard our cells were searched, our property was destroyed, and we were denied cell search receipts. Defendants S. Manson came onto E-row and stated, "I know everything that goes on in my unit. If you and your pals want to tell on me and my officers, I will make your stay back here a living hell." When Defendant S. Manson stopped at my door to stare me down, I immediately noticed he was wearing the distinctive neck covering and wristband adorned by the other STRH brotherhood members. It was at this point that I started to log down the names of every STRH staff member I could identify who wore the distinctive brotherhood attire.

On August 20, 2020, I submitted another group inmate appeal. The heading states: "Emergency Appeal: STRH staff operating like an organized gang wearing distinctive identifying attire, intimidation tactics and psychological torture techniques". After I filed this appeal, I felt the full weight and power of the STRH brotherhood. Defendant B. Freriks came to my door wearing the distinctive STRH brotherhood neck covering. He told me that "I had fucked up this time and that I was a snitch bitch." When he did his welfare checks he started slamming the metal rod on the door so hard I couldn't get a moments rest on his watch and anytime he stripped me out he made comments about my genitals so everyone on the tier could hear and laugh. On September 21, 2020, my cell was trashed while I was at the recreational yard. When I returned to my cell there were pieces of the group inmate appeal all over my floor and I was denied a cell search receipt. Defendants Tyler and B. Freriks made a point to do something to me every shift they worked.

Defendant Thompson was my assigned clinician. She conducted confidential therapy sessions at my cell door speaking loud enough to be herd by all inmates and staff on my tier. I was afraid to speak about my mental health, but it was the only way I could get help. During a confidential mental health therapy session, I was informing Defendant Thompson of the degrading comments that Defendant B. Frefiks had been making about my genitals because I filed an appeal. There are mandatory reporting rules for this type of conduct. While we were talking, we were interrupted by Defendant Freriks during his welfare check. The interruption was brief and then we continued our therapy session. When Defendant Freriks did his next inmate welfare check he stopped at my door and stated, "I saw you talking to mental health. I thought you were G.P. I didn't realize you had so many sensitive needs."

As soon as Defendant Freriks left the tier I was verbally attacked by other inmates on my tier. I was criticized for getting mental health treatment. People were laughing and calling me "weak" and "soft". One of the inmates started repeating what Defendant Freriks had said to me, "I don't have sensitive needs, I don't talk to police, why you whinin?" This went on for months. The inmate would get on his door at random times and repeat

## (Claim II Supporting Facts continued)

this chant about me. Anytime Defendant Frericks would come to my tier he would encourage inmates to start making fun of me. He would say in a loud voice, "Mental health is coming on the tier to talk to Coleman about his feelings, who else needs a hug?" And the inmates would start their chant all over again. After this incident I stopped discussing my ongoing mental health issues. I started to answer all mental health questions with a head nod or yes or no answer so that staff and other inmates did not hear anything else they could use against me. Since this incident I have experienced what I can only describe as terror. Defendants Tyler, Burkheart, and B. Nguyen all started to rile the inmate to chant whenever they came on my tier.

On September 23, 2020, I filed another group inmate appeal along with a letter. In the letter I identified the STRH staff members who wore the distinctive brotherhood attire and I stated exactly how I felt they had put my safety at risk. I listed how they had repeatedly tried to use violence, intimidation, and degradation to silence me. My next run in was with Defendant Burkheart. While being escorted to the recreational yard, Defendant Burkheart couldn't stop coughing. He was sweating profusely, and it wasn't very hot. I asked Defendant Burkheart could he please put on his mask, and he became visibly agitated. He pulled his neck rag around an I could see that it was the distinctive neck cover that represented the STRH brotherhood. Defendant Burkheart said, "You just don't learn. You think you can snitch on us and make demands. You need to worry about who's door is going to accidentally open while you're on the tier, instead of about that fake news."

After I was escorted to the recreational yard by Defendant Burkheart, I became sick. I had a headache, night chills, and I lost my sense of taste. When I told Defendant Burkheart that I wasn't feeling well, he started saying that Covid-19 was "fake news" and that he didn't have to wear a mask because he's an American. Defendant Burkheart started to skip me for Covid tests and temperature checks, then Defendant Frefiks started to skip me for Covid tests and after a while other STRH staff members started to follow their lead. I was sick with Covid like symptoms two separate times and each time I was denied access to medical treatment by the Defendants. Three times. Another inmate's door was opened while I was being escorted so I could be assaulted or hit with human waste (which they refer to as gassing).

On October 22, 2020, I filed a group inmate appeal detailing the conditions of my confinement in the STRH Unit. On November 22, 2020, I filed a group inmate appeal directly to the Chief inmate appeals office. On December 3, 2020, myself and several other inmates tried to contact the inspector general for help. The retaliation was ongoing. No matter what I did, it just continued and got increasingly worse. On December 3, 2020, I filed an inmate appeal explaining my unsafe living conditions, failure of custody staff to disinfect common areas after each use, illegal housing in solitary confinement and the retaliation I faced for filing complaints. I identified

several staff members who refused to wear their protective face masks during escorts or when making contact with me. I named Defendants B. Nguyen, B. Freriks, Burkheart, Sergeant Collinsworth, Sergeant S. Manson, and Registered Nurse Tyler as key members of an STRH organized gang. I listed the identifying attire they wear, and I cited their willingness to break all the rules.

On January 31, 2021, Defendant B. Nguyen came to my cell to escort me to shower. While being placed into one of only two showers with hot water, I asked Defendant B. Nguyen, "Can you please start wearing your mask when you escort me to shower!" Defendant B. Nguyen had been coughing throughout his shift and appeared to be sick. He responded by yanking me out of the shower and escorting me to a shower with no hot water. I have been experiencing pain from my neck from the way my head was jerked back ever since.

At the conclusion of the shower program Defendant B. Nguyen returned to my tier. He was wearing the distinctive neck covering and wristband of the STRH brotherhood. He handed me and 3 other inmates on my tier an official looking document with our names on it. It was labeled "Hurt feelings report". It referred to me as a bitch, a rat and it had a line about my anus bleeding. It was literally the most disrespectful thing that has ever happened to me. Defendant B. Nguyen had a bunch of copies that he was passing out and showing to other inmates. When Defendant B. Nguyen came back to our tier, inmate Sevier asked him, "Why would you do this to us? We never disrespected you?" Defendant B. Nguyen responded by pulling out 4 grievances. He slid one under my door and stated, "That's what happens when you and your buddies file snitch-02(s), deal with it."

I was done with the appeal system after Defendant B. Nguyen passed out and showed other inmates the "Hurt feelings report". I was targeted with human waste on my way to recreational yard. The form referred to me as a "rat" which is another word for "snitch". It's common knowledge amongst prison officials that on a maximum level 4 prison any inmate who is labeled a "rat" or "snitch" will be targeted by other inmates to be assaulted or murdered. Defendant B. Nguyen actions were premeditated. He created a fake official looking CDCR document that placed my life at risk and forced me to live in fear. The "Hurt feelings report" created by Defendant B. Nguyen reached the prison I was transferred to, CSP-Corcoran. On December 20, 2021, I was placed in the STRH solitary confinement unit after staff received information that I was going to be the victim of a homicide. Since my arrival, inmates have been making jokes on the tier about my current situation and the "Hurt feelings report". It is now posted on social media. My nightmare and the risk to my personal safety continue to be an issue. The STRH brotherhood members have ruined my life, my mental health, and hope for a future.

I believe the facts alleged in the claim states cognizable First Amendment claims jointly and severally against STRH Brotherhood defendants Collinsworth, Manson, Tyler, Frericks, Nguyen, Burkheart and Kelly for

the specific acts they committed against me in response to my attempts to report the unconstitutionally lengthy solitary confinement and unconstitutional conditions detailed in Claim I (Supra)

## Claim III

**1. State the Constitutional or other Federal Civil Right that was violated:** 14th Amendment's Prohibition against deliberate indifference to a prisoner health or safety.

**2. Claim III:** Deliberate indifference to threat to health and safety (Defendants acted under color of State Law).

**3. Supporting Facts:** The Defendants Jeff Lynch, Dr. Morgan, Clinician Thompson, J. Stewart, G. Jones, Sergeant Collinsworth, Sergeant S. Manson, J. Frederick, and D. Contreras were deliberately indifferent to threats to my health and safety. Several of the defendants are the classification committee members responsible for me being housed illegally in the STRH solitary confinement unit long term, but they were more than that. They were identified as members of the organized STRH brotherhood gang. Additionally, Defendant Jeff Lynch was the Warden of the entire institution. Defendant Dr. Morgan was the Lead Mental Health Clinician in STRH. Defendants J. Frederick and D. Contreras were STRH correctional counselors. Defendants Collinsworth and S. Manson were STRH sergeants and Defendants J. Stewart and G. Jones both held the rank of Lieutenant or higher. The defendants had both the authority and the ability to abate the risk of harm I suffered and chose to do nothing. The defendants were intentionally indifferent to the harm I faced because they approved of the actions their fellow

**4. Injury:** The defendants caused me to suffer solitary confinement long term, sexual harassment, excessive force, Covid-19 symptoms without access to treatment, mental health issues without treatment, unnecessary pain, and unconstitutional living conditions.

**5. Administrative remedies:**

    a. Are there any administrative remedies available at your institution? **Yes**

    b. Did you submit a request for administrative relief on Claim III? **Yes**

    c. Did you appeal your request on Claim III to the highest level? **Yes** (attempted)

## (Claim III Supporting Facts continued)

STRH brotherhood members carried out. Without their knowledge I witnessed the defendants stand guard while Defendants B. Freriks, B. Nguyen, Burkheart, and Tyler attacked me. I watched them hand out the distinctive wristbands and neck covering to STRH brotherhood members, and I watched them praise STRH brotherhood members for their illegal acts.

The defendants violated mandatory reporting requirements to protect their fellow STRH brotherhood members. When an inmate reports sexual harassment, it is mandatory for them to report the harassment and to ensure that the prisoner is moved to a safe location. During a confidential mental health therapy session, I reported to Defendant Thompson that Defendant B. Freriks had sexual harassed me by making comments about my genitals during strip searches (unclothed).

On October 21, 2020, a few weeks after my first report, I reported the same sexual harassment to Defendant Dr. Morgan. I spoke to Defendants Jeff Lynch, J. Stewart, G. Jones, J. Frederick, D. Contreras, Sergeant Collinsworth, and Sergeant S. Manson personally about being sexually harassed. I am in possession of complaints filed with the defendants herein and Defendant J. Kelly reporting sexual harassment. Not a single defendant reported the sexual harassment or moved me to a safe location. They did nothing except repeatedly retain me in solitary confinement illegally.

I reported to the defendants that the disregard for my safety in the STRH Unit was a daily occurrence. STRH staff allowed quarantined inmates to use the same showers, telephones, and recreational yard cages that I used without sanitizing them between uses. I informed them that if they reviewed the cameras in the STRH Unit they would see Defendants B. Freriks, B. Nguyen and Burkheart escorting inmates without their mandatory facial covering even when they were visibly sick and coughing. I reported that I was being denied access to Covid-19 testing even after I reported to staff that I was sick and had developed Covid-19 symptoms. I reported every allegation, violation, or attack that I suffered in the STRH Unit to Defendants Jeff Lynch, Dr. Morgan, Clinician Thompson, J. Stewart, G. Jones, J. Frederick, D. Contreras, Sergeant Collinsworth, and Sergeant S. Manson some of which they witnessed themselves and each time they failed to protect me.

Defendants J. Kelly was the defendants last line of defense. He was the appeals coordinator responsible for processing inmate appeals for STRH Unit prisoners. He used his position to make the appeals system unavailable for prisoners in the STRH Unit. He repeatedly gave unfiled appeals to the STRH brotherhood members they were against which emboldened them to take immediate retribution. He failed to report sexual harassment which is mandatory. He weaponized the appeal system. He changed the appeal system rules without notice. He did not have the authority, but he did it in solidarity and for the protection and benefit of STRH

## (Claim III Supporting Facts continued)

brotherhood members. Defendant J. Kelly's actions caused me to remain in torturous conditions under a continual organized attacked for 10 months until I was silenced.

I discussed my concerns and fears with defendant Thompson over her conducting my confidential psychiatric appointments in the hearing of staff and other inmates. I never waived my right to confidentiality, and once her actions began to harm me, I filed a formal written complaint.

I believe the facts alleged in this claim states a cognizable Fourteenth Amendment claim against Defendant Thompson for failing to protect and disclosing my sensitive personal mental health information.

## Claim for Injunctive Relief

Plaintiff incorporates by this reference the facts plead in Claims 1-3 (supra) I believe the facts alleged in this complaint state a cognizable claim against Defendant Kathleen Allison for Injunctive relief. As secretary of CDCR, Kathleen Allison is the head of CDCR, and sued in her official capacity for the following injunctive relief

(1) For secure inmate appeal lockboxes to be placed in all STRH units, accessible to inmates housed therein.
(2) To appoint staff and enact policies to ensure "NDS" inmates are transferred out of solitary confinement within the time frame of the standing court order.
(3) For all mental health treatment to be held in a confidential setting unless a waiver is signed by the patient: And
(4) For all mental health, medical, and Covid-19 refusals to be documented on a refusal form signed by the inmate refusing treatment.

## E. Request for Relief

State the relief you are seeking:

**1. Money damages:** Compensatory, punitive, mental, and emotional distress in the amount of $5,000,000.00 (5 million) attorney fees and any further relief the court deems appropriate for the ongoing threat to my safety.

**2. Injunctive relief:** For secure inmate appeal lockbox to be placed in all STRH solitary confinement units, accessible to all inmates housed in STRH Units.

**3. Injunctive relief**: To appoint staff and enact policies to ensure that "NDS" status inmates housed in STRH solitary confinement units are transferred out of solitary confinement in accordance with the standing Federal Court order in Coleman v. Newsome.

**4. Injunctive relief:** For all mental health treatment to be held in a confidential setting unless a waiver is signed by the patient.

**5.Injunctive relief:** For all mental health, medical, and Covid-19 refusals to be documented on a refusal form signed by the inmate patient refusing treatment.

I declare under Penalty of Perjury that the foregoing is true and correct.

Executed On 1/25/23          Signature of Plaintiff _____

Gina Gonzales, BScP, AScRN
Name and title of paralegal, legal assistant or other person who helped prepare this complaint