1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SAAHDI COLEMAN,                              No.  2:21-cv-00625-TLN-EFB (PC)

12                 Plaintiff,

13        v.                                      ORDER AND FINDINGS AND
                                                  RECOMMENDATIONS
14   CALIFORNIA DEPARTMENT OF
     CORRECTIONS, et al.,
15
                  Defendants.
16

17

18        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

19   U.S.C. § 1983.  ECF No. 35.  Defendants Lynch, Morgan, Thompson, Collinsworth, Manson,

20   Stewart, Jones, Nguyen, Burkhart, Frederick, Contreras, and Allison[1], relying in part on federal

21   court records in the class action lawsuit *Coleman v. Newsom*, No. 2:90-cv-00520-KJM-DB (PC)

22   (E.D. Cal.) (the "*Coleman* class action"), move to dismiss plaintiff's Eighth and 14th Amendment

23   claims against them under Federal Rule of Civil Procedure 12(b)(6).  In addition, these

24   defendants seek to dismiss the request for prospective injunctive relief against defendant Allison

25   _____

26        [1] Under the screening order, plaintiff proceeds on a potentially cognizable claim for
     prospective injunctive relief against defendant Allison in her official capacity only.  ECF No. 36
27   at 1.  Defendant Allison has retired as CDCR Secretary as of the end of 2022 and was replaced in
     that position by Jeff Macomber.  ECF No. 53-1 at 2; *see also id*. at 61-63 (Exhibit F).  The court
28   substitutes Macomber for defendant Allison pursuant to Federal Rule of Civil Procedure 25(d).

                                               1

(now Macomber).  ECF No. 53; *see also* ECF Nos. 59 (response), 64 (reply), 70 ("response"), 71 ("response"), 72 (motion to strike ECF Nos. 70 & 71 as unauthorized sur-replies).  These defendants do not seek dismissal of plaintiff's retaliation claims.

Defendant Kelley separately moves to dismiss all claims against him under Rule 12(b)(6). ECF Nos. 58 (motion), 66 (response), 69 (reply), 73 (sur-reply), 74 (motion to strike ECF No. 73 sur-reply).

For the reasons that follow, the court should grant Kelley's motion to dismiss and grant in part the motion to dismiss brought by the other defendants.

## I.   Allegations of the Third Amended Complaint

Plaintiff's claims are based on his 10-month stay in the Short-Term Restricted Housing (STRH) unit at California State Prison – Sacramento (CSP-Sac), beginning on May 1, 2020.  ECF No. 35 at 4.  Defendant Macomber is the Secretary of CDCR.  All other defendants are employees of CSP-Sac.  *Id*. at 2-3.

The TAC asserts the following claims: (1) for violation of the Eighth Amendment by retaining plaintiff in the STRH for an unduly long period, (2) for retaliation against plaintiff in violation of the First Amendment, (3) for violation the Eighth Amendment[2] by exposing plaintiff to unconstitutional conditions in the STRH, and (4) for violation of plaintiff's constitutional right to privacy by conducting psychological counseling at plaintiff's cell door.  The complaint seeks damages and injunctive relief.  ECF No. 35.  Because the bulk of plaintiff's retaliation claims are not challenged by the instant motions, the court will not summarize them here.  (Defendant Kelley seeks dismissal of the retaliation claim against him, which is discussed below in the section addressing Kelley's motion.)

Plaintiff alleges that he was retained in the STRH for 10 months by defendants Lynch, Stewart, Contreras, Morgan, Jones, Frederick, and Collinsworth, who served on the institutional classification committee that determined plaintiff's housing placement.  *Id.* at 5-6.  He claims

---

[2]  Plaintiff mistakenly alleges his conditions of confinement claim arises under the Fourteenth Amendment.  ECF NO. 35 at 14.  Pre-trial detainees must bring their conditions of confinement claims under the Fourteenth Amendment.  Plaintiff is not a pre-trial detainee, and his claims arises, if at all, under the Eighth Amendment.

generally that he was exposed to the following conditions in the STRH: unclean sheets and underwear, cold showers, inadequate ventilation, no lighting, and an unsanitary shower area.  *Id.* at 5.  He does not allege which defendants were responsible for creating, maintaining, or acquiescing to those conditions.  He does, however, allege that defendants Frericks, Burkheart, and B. Nguyen refused to disinfect the recreational yard cages, telephones, and showers between uses.  *Id.*  (Plaintiff was housed in the STRH during 2020, at the height of the Covid-19 pandemic.)  He also alleges that defendant Tyler worked on the unit and coughed on plaintiff's cell door after having been exposed to Covid-19; Tyler was at work because he had not tested positive for the virus.  *Id.* at 9.  Similarly, defendant Burkheart refused to wear a mask on the unit in or around September 2020 despite coughing and sweating, after which plaintiff became sick.  *Id.* at 11.  Defendants Nguyen, Frericks, Collinsworth, and Manson also refused to wear masks while interacting with plaintiff, although plaintiff provides no specifics of these interactions (e.g., when they occurred or the extent of the interactions).  *Id.* at 11-12.

Plaintiff reported his belief that adequate Covid-19 precautions were not being adhered to in the STRH as well as the other poor conditions on the unit to defendants Lynch, Morgan, Thompson, Stewart, Jones, Frederick, Contreras, Collinsworth, and Manson.  *Id.* at 15.

The complaint alleges that Defendant Frericks sexually harassed plaintiff by making comments about his genitalia during strip searches.  *Id.* at 15.  Plaintiff complained about the harassment to defendants Lynch, Morgan, Thompson, Stewart, Jones, Frederick, Contreras, Collinsworth, Manson, and Kelley, but they did nothing.  *Id.*

Plaintiff claims that he filed a grievance with defendant Kelley concerning the conditions in the STRH, but Kelley somehow subverted or misused the grievance system to prevent the issues from being addressed.  *Id.* at 15-16.

Lastly, plaintiff alleges that defendant Thompson conducted mental health counseling with him at his cell door.  *Id.* at 10.  Defendant Frericks witnessed this and used his knowledge of plaintiff's mental health treatment to harass plaintiff and encourage other inmates to harass plaintiff.  *Id.* at 10.

////

3

In screening the TAC, the court found that plaintiff had stated potentially cognizable Eighth Amendment claims against Lynch, Morgan, Collinsworth, Manson, Tyler, Stewart, Jones, Frericks, Nguyen, Burkheart, Kelley, Frederick, and Contreras.  ECF No. 36.  Plaintiff stated a potentially cognizable Fourteenth Amendment claim against defendant Thompson and a potentially cognizable claim for prospective injunctive relief against defendant Allison in her official capacity.  *Id.*  Lastly, as is relevant to the instant motions to dismiss, plaintiff stated a potentially cognizable retaliation claim against defendant Kelley.  *Id.*  (The court found other retaliation claims potentially cognizable as well; those claims are not at issue in the instant motions.)

## II. Requests for Judicial Notice

### A.    Defendants' Requests

Defendants ask the court to take judicial notice of certain pleadings in the *Coleman* class action.  ECF No. 53-1 at 1-2; *see also id*. at 4-60 (Exhibits A through E).  These pleadings are appropriate for judicial notice, and they are material to the disposition of defendants' motion to dismiss plaintiff's Eighth Amendment claims.  Accordingly, defendants' request for judicial notice, ECF No. 53-1, is granted.  *See MGIC Indem. Co. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986) (a court may take judicial notice of court records); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

### B.    Plaintiff's First Request

Plaintiff asks the court to take judicial notice of four documents created by the California Department of Corrections and Rehabilitation (CDCR), including a document describing Covid-19 response efforts, a webpage published in 2020 on Covid-19 preparedness, a report on numbers of Covid-19 infected employees as of January 11, 2021, and a Covid-19 screening and testing matrix for patient movement dated August 19, 2020.  ECF No. 59-1 at 1-2; *see also id*. at 3-46 (Exhibits A through D).  Plaintiff also asks for judicial notice of a document that appears to be two separate letters or portions thereof.  *Id*. at 2; *see also id*. at 48-50 (Exhibit E).  The first letter, dated April 17, 2020, is addressed to the "Inmate Population" and describes mask requirements.  *Id*. at 48.  The second letter fragment is addressed to "Dear Patient" and advises that two Covid-

4

1   19 cases were identified at CSP-Sac. *Id*. at 49-50.

2   Lastly, plaintiff asks for judicial notice of a letter addressed to him from counsel for the

3   *Coleman* plaintiff class. *Id*. at 2, *id*. at 52-53 (Exhibit F). In the letter, a paralegal clerk advises

4   plaintiff that if he is currently receiving or has ever received mental health treatment at a CDCR

5   institution, he is automatically a member of the *Coleman* plaintiff class, and he may pursue his

6   own case for damages against CDCR without opting out of the *Coleman* class action. *Id*. at 52.

7   Defendants object to plaintiff's requests for judicial notice on the grounds that: (1)

8   judicial notice may not be used to supplement or further amend the allegations of the TAC, ECF

9   No. 65 at 1-2 (citing *Gerritsen v. Warner Bros. Entertainment, Inc.*, 112 F. Supp. 3d 1011, 1033

10  n.93 (C.D. Cal. 2015)); (2) the letters plaintiff designates as his Exhibits E and F are not matters

11  generally known or that can be accurately and readily determined from sources whose accuracy

12  cannot reasonably be questioned, *id*. at 2 (citing *Poisson v. Aetna Life Ins. Co*., 488 F. Supp. 3d

13  942, 946 (C.D. Cal. 2020)); and (3) the documents are irrelevant to defendants' motions, *id*. at 2-

14  3.

15  The court must take judicial notice if a party requests it and the court is supplied with the

16  necessary information. Fed. R. Evid. 801(c)(2). Agency documents, such as a printout from an

17  agency website, are proper subjects for judicial notice. *United States v. Carrasco*, 813 F. App'x

18  275, 277 n.1 (9th Cir. 2020). A court may take judicial notice of the acts of a governmental body

19  and documents submitted in the course of its deliberations, but may not take judicial notice as to

20  the truth of claims made in such deliberations. *Health Freedom Defense Fund, Inc. v. Carvalho*,

21  104 F.4th 715, 720, 725 (9th Cir. 2024); *Polanco v. Diaz*, 76 F.4th 918, 932 (9th Cir. 2023). A

22  court may consider matters of public record without converting a motion to dismiss into a motion

23  for summary judgment, but the court cannot take notice of disputed facts contained in the public

24  records. *Ecological Rights Foundation v. PacifiCorp*., ___ F. Supp. 3d ___, 2024 WL 3186566,

25  at *4 (N.D. Cal. June 26, 2024) (citing *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 999

26  (9th Cir. 2018)).

27  The court takes judicial notice of the fact that CDCR implemented measures to respond to

28  the Covid-19 pandemic and issued communications about those measures, as demonstrated in the

documents plaintiff appends as Exhibits A-E of his requests for judicial notice.  The court does not take judicial notice of the truth of the contents of these documents and does not accept as true any inference as to any disputed fact nor any specific Covid-19 response measures implemented by CDCR at any specific point in time.  Nor does the court take judicial notice of the documents for the purpose of supplying allegations that are not in plaintiff's complaint.

The court denies plaintiff's request to take judicial notice of the letter plaintiff appends as Exhibit F because it is opinion and advice from an attorney to a client and is not a proper topic for judicial notice for any purpose relevant to this motion to dismiss.

C.    Plaintiff's Second Request

Plaintiff asks the court to take judicial notice of additional information about how to locate defendants Kelley and Tyler for service of process.  ECF No. 66-1.  This is not a proper topic for judicial notice.  Also, Kelley has already accepted service of process, and the information regarding Tyler is insufficient to effect service on him.  Plaintiff's request for judicial notice is denied.

D.    The Court's *Sua Sponte* Judicial Notice

A court may take judicial notice on its own at any stage of the proceeding.  Fed. R. Evid. 801(c)(1) & (d).  The court takes judicial notice that as recently as July 17, 2024, the parties in the *Coleman* class action submitted a stipulated agreement addressing, *inter alia*, certain transfer timeframes for short- and extended-term programming in the STRH.  *Coleman v. Newsom*, No. 2:90-cv-00520-KJM-DB (PC) (E.D. Cal. July 17, 2024) (ECF No. 8337 at 5, 7 (pleading captioned "Stipulation and [Proposed] Order on the Restricted Housing Unit Program:  Mental Health Services Transfer Timeline Exceptions")).  The July 17, 2024 proposed stipulated agreement, which has not been approved by the court as of the date of this order, provides procedures for "circumstances under which the transfer timelines in sections Cal. Code Regs. tit. 15 §§ 3335.2(d), 3335.3(d), and 3335.4(c) cannot be met[,]" *id*. at 5, and demonstrates that the length of time prisoners spend in STRH units is a topic that is still under consideration in the *Coleman* class action.

6

### III. The Motions to Dismiss

As noted, there are two pending motions to dismiss.  The first motion, brought by the bulk of defendants, seeks to dismiss:  (1) the Eighth Amendment claims regarding plaintiff's length of stay in the STRH against Lynch, Stewart, Jones, Morgan, Frederick, Contreras, and Collinsworth; (2) the Fourteenth Amendment claim against Thompson; (3) the Eighth Amendment conditions-of-confinement claims against Lynch, Morgan, Collinsworth, Manson, Tyler, Stewart, Jones, Frericks, Nguyen, Burkhart, Kelley, Frederick, and Contreras; and (4) the claim for injunctive relief against Macomber as the Secretary of CDCR.  ECF No. 53-2 at 8.  The second motion seeks dismissal of plaintiff's claims against Kelley in their entirety.  ECF No. 58-1 at 6.

### A.     Federal Rule of Civil Procedure 12(b)(6) Standard

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).  Further, "a document filed pro se is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  However, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege enough specific facts to provide both "fair notice" of the particular claim being asserted and "the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007) (citation omitted); *see also* Rule 8(a).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  Rather, "a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'  A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

1    (2009) (citation omitted).

2    ////

3        B.    Eighth Amendment: Length Of STRH Stay

4        Plaintiff alleges that he was placed in the STRH unit at CSP-Sac because he is a

5    participant in the mental health program and staff had received information that he was to be the

6    victim of a violent assault.  ECF No. 35 at 4.  Plaintiff alleges his experience in the STRH was

7    atypical because other inmates were quickly transferred out of the STRH, but plaintiff was kept in

8    that restricted housing long term.  Plaintiff alleges he met with members of his classification

9    committee (defendants Lynch, Stewart, Jones, Morgan, Frederick, Contreras, and Collinsworth)

10   at least five times beginning on May 6, 2020, and that they continued to retain him in the STRH

11   after each meeting.  *Id.* at 5-6.

12       The court agrees with defendants that plaintiff's claim concerning the duration of his

13   STRH stay is encompassed within the *Coleman* class action and therefore must be dismissed. The

14   parties agree that plaintiff is a member of the *Coleman* plaintiff class.[3]  ECF No. 53-2 at 19; ECF

15   No. 59 at 9 (plaintiff states he became a *Coleman* plaintiff class member in 2019).  The parties

16   also agree that the STRH unit was created pursuant to an order in the *Coleman* class action to

17   create specialized housing units for prisoners with mental health diagnosis placed in segregated

18   housing.  ECF No. 35 at 4; *see also id*. at 6; ECF No. 53-2 at 19-20.  The court has taken judicial

19   notice that length of inmate stays in the STRH units was the subject of court orders in the

20   *Coleman* class action in 2014 and 2020; in fact, the issue remains under consideration in the

21   *Coleman* class action as of mid-2024, two years after plaintiff was moved out of the STRH unit at

22   CSP-Sac.

23       Plaintiff maintains his long-term retention in the STRH unit at CSP-Sac violated court

24   orders to move prisoners out of STRH within 72 hours, that he conveyed this to his classification

25   committee, and that the classification committee was aware that plaintiff was a participant in the

26   MHSDS (Mental Health Services Delivery System) program.  ECF No. 35 at 5-6.  Plaintiff

27        [3]  Plaintiff is not the lead plaintiff in the *Coleman* class action, who is named Ralph
     Coleman.  912 F. Supp. 1282 (E.D. Cal. 1995).

28

1  alleges that "defendants ... knowingly chose to violate the standing Federal Court order and retain

2  me in solitary confinement long term." *Id*. at 6.

3      A district court may dismiss portions of a claim that duplicates a class action of which

4  plaintiff is a member but should not dismiss allegations which go beyond the allegations and

5  relief requested in the class action. *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)*,

6  Crawford v. Bell*, 599 F.2d 890, 893 (9th Cir. 1979).  While plaintiff is free to allege independent

7  claims for relief based on violation of his rights under federal law, *Hiser v. Franklin*, 94 F.3d

8  1287, 1291 (9th Cir. 1996), he may not rely on the violation of consent decrees or remedial plans

9  in other cases to state a claim, *Frost v. Symington*, 197 F.3d 348, 358-59 (9th Cir. 1999).  Relief

10  for violation of consent decrees or remedial plans must be pursued in the case in which the decree

11  or plan was issued.  *Frost*, 197 F.3d at 358-59; *Crayton v. Terhune*, No. C 98-4386 CRB (PR),

12  2002 WL 31093590, at *4 (N.D. Cal. Sept. 17, 2002).  To the extent plaintiff's claim is that the

13  duration of his stay in the STRH violated orders in the *Coleman* class action, his claim is within

14  the scope of the *Coleman* class action, and he must bring his claim there.

15      Plaintiff also alleges that his 10-month retention in the STRH violated "CCR 3335(2)(A)"

16  and that he should have been transferred out of the STRH within 72 hours of arrival.  ECF No. 35

17  at 6.  According to defendants, this is a reference to Cal. Code Regs. tit. 15, § 3335(a)(2)(A)

18  (effective to Oct. 31, 2023).  Defendants correctly argue that violations of state regulations do not

19  establish a constitutional violation, and that segregated confinement does not itself violate the

20  Eighth Amendment.  ECF No. 53-2 at 20-21 (citing *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th

21  Cir. 2009) and *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)).  Accordingly, any claim plaintiff

22  raises based on an alleged violation of title 15 fails.

23      For these reasons, it is recommended that the TAC's length-of-stay claims – asserted

24  against defendants Lynch, Stewart, Jones, Morgan, Frederick, Contreras, and Collinsworth (ECF

25  No. 35 at 5-6) – be dismissed with prejudice.  *See Ctr. For Bio. Diversity v. United States Forest

26  Serv*., 80 F.4th 943, 956 (9th Cir. 2023) ("Amendment is futile when 'it is clear … that the

27  complaint could not be saved by any amendment.'" (quoting *Armstrong v. Reynolds*, 22 F. 4th

28  1058, 1071 (9th Cir. 2022))).

C.      Eighth Amendment: Conditions Of Confinement

      1.      Claims Against Custodial Defendants

Plaintiff claims that the conditions of his confinement in STRH violated his Eighth Amendment rights.  Extreme deprivations are required to make out a conditions-of-confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731-32 (9th Cir. 2000) (quotations and citations omitted).  Conditions of confinement in combination may have a "mutually enforcing effect" that deprives a single identifiable human need such as food, warmth, or exercise, but "[a]morphous overall conditions cannot rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Brown v. Bueno*, No. 1:17-cv-01295-LJO-SKO (PC), 2018 WL 6068513, at *3 (E.D. Cal. Nov. 20, 2018) (citing and quoting *Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991) (internal quotation marks omitted)).

Defendants argue that plaintiff has failed to allege sufficient facts to support his conditions-of-confinement claims.  It is true that many of plaintiff's allegations do not tie a specific allegedly unconstitutional condition to the conduct of any specific defendant (e.g., allegations concerning shower cleanliness and laundry).  Such allegations cannot form the basis of a cognizable claim. *See Ashcroft*, 556 U.S. at 676.  Other allegations mention specific defendants but are unspecific as to the degree or duration of the condition (e.g., ECF No. 25 at 5, alleging that defendants Frericks, Nguyen, and Burkheart refused to disinfect recreational yard cages, telephones, and showers between uses and that defendants Frericks, Collinsworth, Nguyen, Burkheart, and Manson "denied all sanitation protocols to me"; *id.* at 11-12, alleging that defendants Nguyen, Frericks, Collinsworth, Manson, and Tyler refused to wear masks while interacting with plaintiff).  Because the "circumstance, nature and duration" of a condition of confinement must be examined to determine whether the condition violated the Eighth Amendment, the absence of such allegations in the TAC also fail to state cognizable claims.

1   *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

2          Similarly, plaintiff's claims that he reported such conditions to supervisory defendants

3   who did not remedy them fail.  Plaintiff has not stated sufficient facts that would show the

4   conditions to be unconstitutional in the first place (thereby giving rise to a potential obligation on

5   the part of such defendants to act).  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (to

6   properly plead supervisory liability, a plaintiff must allege facts indicating that supervisory

7   defendants either personally participated in the alleged deprivation of constitutional rights, knew

8   of the violations and failed to act to prevent them (or remedy them), or promulgated or

9   implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights

10   and is the moving force of the constitutional violation.").  Thus, these claims must also be

11   dismissed with leave to amend.

12          Plaintiff alleges that defendant Frericks sexually harassed him during strip searches by

13   commenting on plaintiff's genitalia and that plaintiff complained about the harassment to

14   defendants Lynch, Stewart, Jones, Frederick, Contreras, Collinsworth, Manson and Kelley, but

15   they did nothing.  ECF No. 35 at 15.  While verbal harassment generally does not arise to the

16   level of a constitutional violation, verbal sexual harassment may violate the Eighth Amendment if

17   it is "unusually gross even for a prison setting and . . . calculated to and did cause . . .

18   psychological damage."  *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996).  Although

19   plaintiff's mental health is surely a relevant factor, he has not alleged sufficient facts to determine

20   whether Frericks' comments potentially satisfy this rule, and thus this claim should also be

21   dismissed with leave to amend.

22          Plaintiff alleges that, on some occasion on or around September 2020, defendant

23   Burkheart refused to wear a mask despite coughing and sweating and that plaintiff thereafter

24   became sick.  ECF No. 35 at 11.  He alleges that defendant Tyler worked on the STRH at some

25   unspecified time despite having been exposed to Covid-19 (but having no positive test for the

26   virus) and coughed on plaintiff's door.  *Id.* at 9.  Correctional staff have an obligation under the

27   Eighth Amendment to protect prisoners from infectious diseases.  *Helling v. McKinney*, 509 U.S.

28   25, 33 (1993).  To succeed on such a claim, a prisoner must allege facts showing that the risk

1    posed by the disease was sufficiently serious and that the defendant was aware of the risk but

2    failed to take reasonable steps to abate it.  *Davis v. Allison*, No. 1:21-cv-00494-JLT-HBK (PC),

3    2023 U.S. Dist. LEXIS 184930, at *6 (E.D. Cal. Oct. 13, 2023).  Courts have concluded that

4    Covid-19 poses a sufficient risk on which to premise Eighth Amendment liability.  *Id.*  However,

5    plaintiff has not alleged facts from which it can be determined if Tyler and Burkheart were

6    subjectively aware that they were exposing plaintiff to Covid-19.  Plaintiff does not allege that

7    either defendant had Covid-19.  Rather, as to Tyler, he alleges that Tyler had not tested positive

8    for the virus.  Nor does plaintiff include any facts indicating the circumstances and duration of his

9    interactions with Burkheart and Tyler.  Accordingly, these claims should also be dismissed with

10   leave to amend.

11          In sum, it is recommended that plaintiff's Eighth Amendment claims be dismissed with

12   leave to amend so that plaintiff is afforded an opportunity to cure his claims with the allegation of

13   additional facts as indicated above.

14          D.      Fourteenth Amendment Claim

15          Plaintiff alleges that Thompson, a psychologist, conducted cell-side therapy sessions at

16   plaintiff's door speaking loudly enough to be heard by inmates and staff on the tier.  ECF No. 35

17   at 10.  Plaintiff alleges he reported defendant Frericks' sexual harassment to Thompson at one

18   such session.  *Id.*  Frericks interrupted plaintiff's discussion with Thompson to conduct a welfare

19   check, and allegedly made a comment at the next welfare check that "I saw you talking to mental

20   health I thought you were G.P.  I didn't realize you had so many sensitive needs."  *Id.*  Plaintiff

21   alleges that "verbal attacks" about this topic continued for months.  *Id.* at 10-11.  Plaintiff alleges

22   that Thompson violated his Fourteenth Amendment rights by disclosing plaintiff's sensitive

23   personal mental health information.  *Id.* at 16.

24          Defendants assert that prisoners have no expectation of privacy and that cell-side

25   psychiatric consultations do not violate any constitutional right.  ECF No. 53-2 at 15 (citing *inter*

26   *alia Bell v. Wolfish*, 441 U.S. 520, 557-58 (1979) and *Hudson v. Palmer*, 468 U.S. 517, 525-26

27   (1984)).  In finding plaintiff's claim against Thompson potentially cognizable, this court relied on

28   *Robinson v. Purcell*, No. 2:14-cv-0790, 2019 U.S. Dist. LEXIS 49641 (E.D. Cal. Sept. 22, 2014),

which stated:

> One component of the right of privacy resident in the Fourteenth Amendment is "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977); *Davis v. Bucher*, 853 F.2d 718, 719 (9th Cir. 1988) (citing *Whalen*). This protected privacy interest in avoiding disclosure of personal matters clearly encompasses medical information and its confidentiality. *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260, 1269 (9th Cir. 1998).

> At the same time, it is also well understood that "imprisonment carries with it the circumscription or loss of many significant rights." *Hudson v. Palmer*, 468 U.S. 517, 524, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984). Prisons have a penological interest in curtailing inmates" privacy rights. *See Gomez v. Vernon*, 255 F.3d 1118, 1133 (9th Cir. 2001). As a result, the loss of privacy is an "inherent incident[ ] of confinement." *Bell v. Wolfish*, 441 U.S. 520, 537, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979).

> \*\*\*

> In sum, inmates only retain privacy rights that are not inconsistent with legitimate penological objectives. *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987) (stating prison regulation which impinges on inmate's constitutional rights is valid if reasonably related to legitimate penological interests).

*Robinson v. Purcell*, No. 2:14-cv-0790 MCE AC P, 2019 U.S. Dist. LEXIS 49641, at \*6-8 (E.D. Cal. Mar. 25, 2019). Defendants argue that *Robinson* got the law wrong because "neither *Norman-Bloodsaw* nor *Whalen* were concerned with prison inmates or privacy rights inside a prison." ECF No. 53-2 at 16. Defendants argue that *Hudson* mandates the conclusion that prisoners have "no reasonable expectation of privacy in prison[.]" *Id.* But *Hudson* did not so hold, nor does its holding lead inexorably to that conclusion. Rather, *Hudson* was limited to a determination that prisoners have no reasonable expectation of privacy *in the contents of their cells* such that the Fourth Amendment would govern cell searches. *Hudson*, 468 U.S. at 526 ("[S]ociety is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."). *Hudson* does not support the premise that prisoners have no reasonable expectation of privacy in their confidential medical information. Whether plaintiff will be able to present sufficient evidence at trial, or in opposition to a Rule 56 motion, that Thompson disclosed plaintiff's sensitive personal

13

1    mental health information remains to be seen.  But absent controlling authority to the contrary,

2    the court should decline to contradict the well-reasoned decision in *Robinson*.

3         Defendants argue that Thompson should be afforded qualified immunity.  Qualified

4    immunity protects government officials from liability for civil damages where a reasonable

5    person would not have known their conduct violated a clearly established right.  *Anderson v.*

6    *Creighton*, 483 U.S. 635, 638-39 (1987).  In determining whether the doctrine of qualified

7    immunity provides a government officer protection, a court must make two inquiries: 1) whether

8    the facts alleged show that the officer violated a constitutional right; and 2) whether the

9    constitutional right well established.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v.*

10   *Callahan*, 555 U.S. 223 (2009) (courts have discretion to decide which of the two *Saucier* prongs

11   to address first).  "In other words, existing law must have placed the constitutionality of the

12   officer's conduct beyond debate. . . . This demanding standard protects all but the plainly

13   incompetent or those who knowingly violate the law."  *District of Columbia v. Wesby*, 583 U.S.

14   48, 63 (2018) (internal citations and quotation marks omitted).

15        Defendants first argue that Thompson should be afforded qualified immunity because,

16   under *Hudson*, "it is established law that inmates have no reasonable expectation of privacy in

17   prison."  ECF No. 53-2 at 17.  But, as discussed above, that is an inaccurate statement of

18   *Hudson*'s holding.  *See also Norman-Bloodsaw*, 135 F.3d at 1269 ("The constitutionally

19   protected privacy interest in avoiding disclosure of personal matters clearly encompasses medical

20   information and its confidentiality."); *Brown v. Vovkulin*, No. 2:20-cv-02098 CKD P, 2021 U.S.

21   Dist. LEXIS 74003, at *6 (E.D. Cal. Apr. 16, 2021) ("[I]n the prison context, the Ninth Circuit

22   has found that an inmate's right to informational privacy may yield to the need for institutional

23   safety and security," citing *Seaton*, 610 F.3d at 534-35).

24        Defendants next argue that any right plaintiff may have in private mental health treatment

25   in prison is not well-established because there is a lack of definitive authority on the issue.  The

26   court disagrees.  The Ninth Circuit, and district courts within the circuit, routinely recognize

27   inmates' right to informational privacy.  *E.g., Seaton v. Mayberg*, 610 F.3d 530, 539 (9th Cir.

28   1996); *Doe v. Beard*, No. EDCV 13-02262 DDP (SPx), 2014 U.S. Dist. LEXIS 95643, at *11

(C.D. Cal. July 14, 2014) ("The Ninth Circuit has repeatedly recognized a constitutionally protected interest in avoiding disclosure of personal matters, including medical information."); *Brown*, 2021 U.S. Dist. LEXIS 74003. While such a right may be circumscribed by legitimate penological concerns, the court lacks the information at this stage of the proceeding to assess the legitimacy of Thompson's decision to conduct counseling at plaintiff's cell. *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) ("When, as here, defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies.") (internal quotation marks omitted).

Accordingly, the court should deny defendant's request to dismiss plaintiff's 14th Amendment claim against defendant Thompson.

E.      The Injunctive Relief Claims

Defendants argue that plaintiff's request for injunctive relief against defendant Macomber (successor to defendant Allison) must be dismissed because it has been mooted by plaintiff's move to another prison. Defendants further argue that plaintiff's request for system-wide injunctive relief must be pursued in the *Coleman* class action. The court need not address the viability of plaintiff's requests for injunctive relief at this time.

Plaintiff's requests for injunctive relief are not a separate cause of action. *Diaz-Amador v. Wells Fargo Home Mortgages*, 856 F. Supp. 2d 1074, 1083 (D. Ariz. 2012). Rather, injunctive relief is a remedy that will turn upon whether plaintiff can actually prove the requisite elements of his substantive claims. *Donney v. Beard*, No. 2:15-cv-2530-JAM-EFB P, 2016 U.S. Dist. LEXIS 19251, at *8-9 (E.D. Cal. Feb. 17, 2016). Accordingly, the court should deny defendant's request to dismiss the injunctive relief claims.

F.      Motion to Strike Sur-replies

Plaintiff filed two sur-replies to defendants' first motion to dismiss (ECF No. 53). ECF Nos. 70, 71. Plaintiff's first sur-reply disputes defendants' arguments against plaintiff's requests for judicial notice. ECF No. 70. Plaintiff's second sur-reply argues that his membership in the *Coleman* class does not preclude him from pursuing his claims in this action, repeats generalized

15

allegations about his Eighth Amendment conditions of confinement claim, and also contains additional allegations regarding his Fourteenth Amendment claim against defendant Thompson. ECF No. 71.

Defendants move to strike both sur-replies as unauthorized under Local Rule 230(l), and because the exceptions contained in Local Rule 230(m) do not apply.  ECF No. 72 at 2.  The sur-replies neither object to reply evidence, nor give notice of supplemental authority.  *See* Local Rule 230(m).  The court finds defendants' arguments well-taken and will therefore strike plaintiff's sur-replies at ECF Nos. 70 and 71.

G.      Kelley's Motion to Dismiss

The TAC alleges that Kelley, as appeals coordinator, failed in various ways to respond appropriately to "inmate appeals" and that he "used his position to make the appeals system unavailable for prisoners in the STRH unit."  ECF No. 35 at 15.

Defendant Kelley argues that the TAC does not plausibly allege any specific factual basis for an Eighth Amendment conditions-of-confinement claim against Kelley and also fails because inmates do not have a right to a particular appeals process.  ECF No. 58-1 at 13.  The court agrees.  As noted above, the TAC does not contain sufficient factual allegations to show that an Eighth Amendment violation occurred, thus Kelley cannot be liable for failing to act to prevent or remedy such a violation.  And there is no constitutional right to a specific grievance procedure and no cause of action for improper grievance processing.  *McCoy v. Roe*, 509 Fed. Appx. 600, 660 (9th Cir. 2013); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

Defendant Kelley also argues that the TAC fails to state a cognizable retaliation claim.  To state a viable First Amendment retaliation claim, a prisoner must allege five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).  Conduct protected by the First Amendment includes communications that are "part of the grievance process."  *Brodheim v. Cry*, 584 F.3d 1262, 1271 n.4 (9th Cir. 2009).  The court agrees that the TAC fails to allege that

Kelley's alleged improper processing of plaintiff's grievances was undertaken because of plaintiff's filing of grievances or other protected conduct.

Defendant Kelley also argues that plaintiff's claims against him are barred by the doctrine of qualified immunity.  Because the claims against Kelley must be dismissed for failure to state a claim, the court does not reach Kelley's argument for qualified immunity.

Defendant Kelley argues that plaintiff has already been given ample opportunity to state a claim against him and so should not be allowed to further amend the TAC.  Out of an abundance of caution, the undersigned recommends that plaintiff be given one final opportunity to amend the TAC to state actionable claims against Kelley.  The court therefore recommends that Kelley's motion to dismiss be granted with leave to amend.

H.      Motion To Strike Sur-Reply

Plaintiff has filed a sur-reply to Kelley's motion to dismiss, in which plaintiff attempts to expand upon the allegations of the TAC's claim against Kelley.  ECF No. 73.  Kelley objects to the sur-reply as unauthorized under Local Rule 230(l) and because it neither objects to reply evidence nor gives notice of supplemental authority as allowed under Local Rule 230(m).  ECF No. 74.  The court agrees and will therefore strike plaintiff's sur-reply at ECF No. 73.  Should the district judge dismiss plaintiff's claims against Kelley with leave to amend, as recommended, plaintiff may seek leave to file a further-amended complaint including these allegations.

**IV.  Order And Recommendations**

Accordingly, IT IS HEREBY ORDERED that:

1.      Defendants' requests for judicial notice, ECF No. 53-1, are GRANTED.

2.      Plaintiff's requests for judicial notice, ECF No. 59-1, are GRANTED IN PART as to his Exhibits A-E and DENIED IN PART as to his Exhibit F.

3.      Plaintiff's request for judicial notice, ECF No. 66-1, is DENIED.

4.      Defendants' motion, ECF No. 72, to strike plaintiff's sur-replies at ECF Nos. 70 and 71 is GRANTED.

5.      Defendant Kelley's motion, ECF No. 74, to strike plaintiff's sur-reply at ECF No. 73, is GRANTED.

6.      Jeff Macomber is substituted for defendant Kathleen Allison.  The Clerk of Court is directed to modify the caption of this action to acknowledge the substitution.

Further, IT IS HEREBY RECOMMENDED that:

1.      Defendants' motion to dismiss, ECF No. 53 be:

A)      GRANTED IN PART without leave to amend as to plaintiff's Eighth Amendment claims against all defendants regarding his placement and length of stay in the STRH Unit at CSP-Sac;

C)      GRANTED IN PART with leave to amend as to plaintiff's Eighth Amendment conditions-of-confinement claims; and

D)      DENIED as to plaintiff's 14th Amendment claim against defendant Thompson.

2.      Defendant Kelley's motion to dismiss, ECF No. 58, be GRANTED with leave to amend.

3.      Plaintiff be granted 30 days from the date of any order adopting these recommendations to file a motion for leave to file a fourth amended complaint, should he wish to attempt to cure the deficiencies identified herein as to claims dismissed with leave to amend.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 6, 2024

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE