UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAAHDI COLEMAN,<br>Plaintiff,<br>v.<br>CALIFORNIA DEPARTMENT OF CORRECTION AND REHABILITATION, et al.,<br>Defendants. | No. 2:21-cv-00625-TLN-EFB (PC)<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Plaintiff initiated this action on March 20, 2021 (ECF No. 1), along with an application to proceed *in forma pauperis* (IFP). ECF No. 2. He was subsequently granted IFP status. ECF No. 6. Plaintiff filed his Fourth Amended Complaint (FAC) on December 23, 2024. ECF No. 81. Per an order filed August 7, 2025, this court recommended dismissal with prejudice of all of plaintiff's claims, except for the First Amendment claim against defendants Freriks, Burkhart, Collinsworth, Tyler, Manson, and Nguyen, and the Fourteenth Amendment claim against defendant Thompson based solely on cell-side consultations. ECF No. 97. This court subsequently recommended dismissal with prejudice of all claims against defendant Tyler. ECF No. 100. The district court subsequently adopted this court's recommendations. ECF No. 101. Now before the court is defendants' motion to dismiss this matter with prejudice due to plaintiff's alleged intentionally false statements in his IFP application. ECF No. 104. For the following reasons, defendants' motion should be GRANTED.

## I. Factual Background

In this district, plaintiffs generally seek IFP status by submitting a form application. ECF No. 2. Relevant to this case, the form asks the applicant to list all income from the prior twelve months, any money in a bank account, and any other assets of value. In his IFP application, plaintiff declared under penalty of perjury that he had received no money from any source in the twelve months prior to submitting his application. *Id.* He also declared that he had no assets, no cash, and no checking or savings accounts, and stated that no one was dependent on him for support. *Id.* Plaintiff also submitted a statement of his inmate trust account, which showed a balance of nine cents. *Id.*

Defendants have submitted substantial evidence that plaintiff had additional assets that he did not disclose at the time he signed his IFP application on February 12, 2021.[1] Declaration of Arthur B. Mark III (Mark Decl.); ECF No. 104-2; *see also* ECF No. 105. Specifically, defendants have submitted evidence that plaintiff was in possession and control of approximately $5000 in cash in the relevant period of time before he submitted his IFP application. Mark Decl. Exs. A-L. Defendants have submitted transcripts of recordings of telephone calls between plaintiff and his mother, Linda Watson, and his friend, Gina Gonzalez, that confirm plaintiff's finances. *Id.*; *see also* ECF No. 105 (notice of lodging of CD with audio recordings of the relevant phone calls).

On September 26, 2020, plaintiff discussed in a phone call with his mother that he had approximately $4000 in various cash and debit cards, including Green Dot, Not Spend, and Walmart cards.[2] Mark Decl. Ex. A. On the same phone call, plaintiff stated that he had received an IRS check for $1200. *Id.* Plaintiff also spoke to his mother on January 28, 2021; on that call plaintiff discussed that his mother took $2000 from his cards, and he tells her to deposit that money in his Chime or Varo bank accounts.[3] Mark Decl. Ex. B. Plaintiff's mother stated that

---

[1] Although plaintiff filed his lawsuit and his request for IFP status on March 30, 2021 (ECF Nos. 1 and 2), his financial affidavit in support of his request was signed and dated February 12, 2021. ECF No. 2 at 2.

[2] The court takes judicial notice that these cards are debit cards and/or prepaid card services. *See* Fed. R. Evid. 201(b).

[3] The court takes judicial notice that Chime and Varo are online banks. *See* Fed. R. Evid.

she wanted plaintiff to have access to *his* money. *Id.*

On February 6, 2021, plaintiff had another telephone call with his mother. Mark Decl. Ex. C. During the call, plaintiff's mother confirmed that she took $2900 of his money off of his cards and deposited it into his Varo bank account. *Id.* Plaintiff told his mother to tell his friend, Gina Gonzales, about the money, and plaintiff's mother texted Gonzales during their phone call. Later that day, plaintiff also had a call with Gonzales, where he told her to instruct his mother about how to move money and set up Cash App accounts in plaintiff's name and his mother's name, and also how to sync one of plaintiff's bank cards to the Cash App account so that his mother could deposit money.[4] *Id.* Plaintiff also mentioned that he would be filing a lawsuit, which he did on March 30, 2021. *Id.*; ECF No. 1.

In various other calls, plaintiff instructed his mother and Gonzales to limit the amount of money deposited in his prison trust account. Mark Decl. Ex. E. Plaintiff also told them to send money to other inmates, to move money between accounts, and to create a power of attorney to assist with depositing and transferring his money. *Id.* at Exs. G, I, and F. Shortly after plaintiff signed his IFP application on February 12, 2021 (ECF No. 2), plaintiff gave $1100 to Gonzales. *Id.* at Exs. K and L (transcripts of February 15 and February 21, 2021 phone calls to Gonzales).

## II. Legal Standard

28 U.S.C. § 1915(a) allows a person to proceed IFP after he or she submits to the court an affidavit that includes a statement of all of the person's assets and a statement that the person cannot pay the filing fee. Additionally, a prisoner seeking to proceed IFP must also submit a certified copy of his or her prison trust account statement for the six months prior to the filing of the complaint. 28 U.S.C. § 1915(a)(2). An IFP affidavit "is sufficient where it alleges that the affiant cannot pay the court costs and still afford the necessities of life." *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015) (considering the impact of the filing fee on the budget of the

---

201(b).

[4] The court takes judicial notice that Cash App is a banking and debit card service. *See* Fed. R. Evid. 201(b).

applicant in determining that she should have been granted IFP status). Where the IFP applicant is a prisoner, however, courts recognize that most necessary life expenses are covered by the government. *Kennedy v. Huibregtse*, 831 F.3d 441, 443 (7th Cir. 2016) (noting that plaintiff's entire $2000 in assets were available to him to pay for his lawsuit because the prison paid for his food, clothing, shelter, and medical care). 28 U.S.C. § 1915(e)(2)(A) provides: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the allegation of poverty is untrue[.]" The statute was amended in April of 1996; it had previously provided that the court "*may* dismiss the case if the allegation of poverty is untrue[.]" 28 U.S.C. § 1915(e) (1996) (emphasis added).

**III. Analysis**

Plaintiff does not dispute the substantial evidence submitted by defendants that demonstrates he had assets of around $5000 in the relevant period before he filed his IFP affidavit. Rather, plaintiff argues that defendants rely on transcripts from phone calls that took place several weeks before he filed his lawsuit. ECF No. 113. According to plaintiff, the transactions referred to in the phone calls do not accurately reflect his "financial reality" at the time he actually signed his financial affidavit, on February 12, 2021. *Id.* Plaintiff maintains that the money in question was used by his domestic partner (presumably Gonzales) to support his three children, and that he did not have any money at his disposal by the time he signed his financial affidavit. *Id.* Plaintiff does not submit any sworn testimony or financial records in support of his allegations.

Plaintiff's argument is without merit. The IFP application requires disclosure of assets for twelve months prior to submission, not merely the day of filing. ECF No. 2. The evidence submitted by defendants confirms plaintiff had around $5000 during that time period. Plaintiff stated under penalty of perjury that he had not received any money from any source in the previous twelve months, even though he had received a check from the IRS. Mark Decl. Ex. A. Moreover, the evidence confirms that even on or around the date he signed his financial affidavit (February 12, 2021), plaintiff had around $2900 in cash assets, and he gave $1100 of that to Gonzales. Mark Decl. Exs. K & L. Finally, when asked on the IFP application to disclose "all

persons dependent on you for support", plaintiff wrote "N/A", undercutting his current allegation that his assets were going to his children. Defendants argue that because plaintiff's application was deliberately and undisputedly inaccurate, this case should be dismissed without prejudice pursuant to section 1915(e)(2)(A).

The Ninth Circuit provided a starting point for analysis of section 1915(e)(2)(A) cases in *Escobedo*, 787 F.3d at 1234 n.8, stating that, to dismiss a complaint under section 1915(e)(2)(A), the court must find that the allegation of poverty was not just inaccurate, but made in bad faith. Consistent with that approach, other courts have concluded that, where the allegation of poverty is untrue but there is no showing of bad faith, the court should impose a lesser sanction than outright dismissal with prejudice, for example, revoking IFP and provide a window for the plaintiff to pay the filing fee, or dismissing without prejudice. *Camp v. Oliver*, 798 F.2d 434, 438 (11th Cir. 1986); *Mahone v. Pierce Cnty.*, No. C14-5665 BHS-KLS, 2014 WL 6997734, at *3-4, 2014 U.S. Dist. LEXIS 170997 at *7-8 (W.D. Wash. Dec. 10, 2014); *Jacobsen v. Am. Honda Motor Co.*, No. CV 10-134-PK, 2010 WL 3118364, at *3, 2010 U.S. Dist. LEXIS 80060 at *4-9 (recommending dismissal without prejudice where plaintiff failed to disclose income on IFP application but the evidence did not conclusively show intentional misrepresentation).

Courts routinely dismiss cases with prejudice upon finding that the plaintiff has intentionally withheld relevant information or has otherwise manipulated his finances to make it appear that he is poorer than he actually is: *i.e.,* where the facts show that the inaccuracy on the IFP application resulted from the plaintiff's bad faith. Thus, in *Kennedy v. Huibregtse*, 831 F.3d 441, 442-44 (7th Cir. 2016), the Seventh Circuit affirmed the district court's dismissal with prejudice of a complaint pursuant to section 1915(e)(2)(A) where the plaintiff failed to reveal that he had a trust account outside of prison, managed by a friend, containing about $1400 at the time of the plaintiff's IFP application. Importantly, the court found that, even if the district court would have granted the plaintiff IFP status if it had known about the trust account, "hiding assets is not a permissible alternative to seeking the judge's assistance. An applicant has to tell the truth, then argue to the judge why seemingly adverse facts (such as the trust fund in this case) are not

dispositive. A litigant can't say, 'I know how the judge *should* rule, so I'm entitled to conceal material information from him.'" *Id.* at 443 (emphasis in original).

Similarly, the Seventh Circuit affirmed a dismissal with prejudice under section 1915(e)(2)(A) where the plaintiff had not disclosed a savings account he controlled with a balance of over $32,000 at the time of his IFP application. *David v. Wal-Mart Stores, Inc.*, 669 F. App'x 793 (7th Cir. 2016). The court rejected the plaintiff's explanation that he regarded the account as off-limits because he kept that money for his family in case of financial hardship. *Id.* at 794. *Id.* And, as in *Kennedy*, the court emphasized that the plaintiff must disclose assets to the court and allow the court to assess their availability to him. *Id.* at 794.

The Second Circuit reached the same conclusion in *Vann v. Comm'r of the N.Y.C. Dep't of Corr.*, 496 F. App'x 113 (2d Cir. 2012), affirming dismissal with prejudice where the plaintiff made false statements and intentionally concealed income on his IFP application. *Id.* at 114. Plaintiff had omitted about $2,000 of income from the application. *Id.* at 115-16. The court found irrelevant whether the plaintiff had spent the money before submitting his IFP application, because the statute required him "to accurately and truthfully state his financial history and assets," and he had not done so. *Id.* at 116. Moreover, the plaintiff was "an experienced litigator with extensive knowledge and familiarity with the in forma pauperis system." *Id.* This fact supported a finding of bad faith. *Id.* at 115 ("To determine whether a plaintiff has acted in bad faith a court may consider a plaintiff's familiarity with the in forma pauperis system and history of litigation.")

In a number of cases finding bad faith, prisoner-plaintiffs have diverted funds in the period leading up to their IFP application to others, usually family members. In *Roberts v. Beard*, No. 15cv1044-WQH-RBM, 2019 WL 3532183, 2019 U.S. Dist. LEXIS 120744 (S.D. Cal. Aug. 2, 2019), the plaintiff received a $3,000 settlement on October 21, 2014, transferred $2,000 to his sister on the same day, and used the remainder to pay outstanding court filing fees. *Id.* at *3-12. On April 14, 2015, the plaintiff submitted an IFP application indicating that he had not received any money from any other sources in the prior twelve months. *Id.* When the defendants sought dismissal, the plaintiff claimed he had forgotten about the $3,000 settlement, had not benefitted

from it, and no longer had the money at the time of his application. *Id.* at *10. The court rejected these claims as not credible based on the plaintiff's extensive litigation history and familiarity with the IFP process. *Id.* at *7-11 (quoting *Vann*); *see also Witkin v. Lee,* No. 2:17-cv-232, 2020 WL 2512383 * 3 (E.D. Cal. May 15, 2020).

In *Cuoco v. U.S. Bureau of Prisons*, 328 F. Supp. 2d 463 (S.D.N.Y. 2004), the plaintiff sought IFP status on October 27, 1998, despite accepting settlement offers in two other cases totaling $13,500 in the prior three weeks. *Id.* at 464-65. She stated on her IFP application that she had enough money in an account in the community to pay the fee, but could not access the money because prison officials were not allowing her to receive checks. *Id.* at 464. She did not disclose the settlements. While her IFP application was pending, she asked that the settlement checks be sent to her mother, and they were. *Id.* at 465. The court found that plaintiff, who had obtained IFP status in 15 other suits, had diverted the funds to her mother's address to perpetuate a negative balance in her prison account while misrepresenting to the court that circumstances beyond her control made it unfeasible to have money deposited there. *Id.* at 468-69. This manipulation of the IFP system justified dismissal of her case with prejudice. *Id.* at 468-69. In *Richmond v. Housewright*, 101 F.R.D. 758 (D. Nev. 1984), the plaintiff did not reveal $2,100 in income he had received during the 12 months preceding his IFP application for work performed as an inmate law clerk and paid directly to the plaintiff's fiancée. Finding that the plaintiff had "deliberately lied," the court dismissed the case. *Id.* at 759.

These cases reveal that the essential questions before the court are: (1) was plaintiff's allegation of poverty untrue and, if so, (2) did plaintiff submit the untrue IFP application in bad faith? The evidence submitted by defendants, and not disputed by plaintiff, shows that plaintiff deliberately lied in his IFP application and, in fact, that plaintiff has attempted to exploit the IFP process in a manner that the court must not allow.

To begin with, as discussed *supra*, it is undisputed that plaintiff's allegation of poverty in his IFP allegation is untrue. Plaintiff did not submit the required evidence of his assets, and instead stated falsely under penalty of perjury that his assets in the previous twelve months were non-existent. Second, plaintiff's conclusory allegation that he acted in good faith is not supported

by the evidence. Extensive litigation history and familiarity with the IFP process can support a finding of bad faith when a litigant's IFP application is untrue. *See, e.g.*, *Roberts*, 2019 WL 3532183 at *7-11; *Vann,* 496 F. App'x at 15. Here, plaintiff is experienced with prison litigation; he has filed multiple other prisoner civil rights lawsuits in this district prior to filing the instant matter. *See, e.g., Coleman v. Hill*, No. 2:12-cv-2171 (E.D. Cal.) (filed August 20, 2012); *Coleman v. CDCR*, No. 2:13-cv-1590 (E.D. Cal.) (filed August 1, 2013); *Coleman v. Foulk*, No. 2:13-cv-1753 (E.D. Cal.) (filed August 23, 2013); *Coleman v. Figueroa*, 1:15-cv-109 (E.D. Cal.) (filed January 22, 2015); *Coleman v. Davis*, No. 2:15-cv-1434 (E.D. Cal.) (filed July 6, 2015).

Furthermore, it is also undisputed that plaintiff deliberately kept his assets outside of his prison trust account, making it easier for him not to disclose them. Mark Decl. Ex. E. In addition, diversion of funds to friends or family members, as here, is indicative of bad faith. *See, e.g., Cuoco*, 328 F. Supp. 2d at 464-65; *Richmond*, 101 F.R.D. at 759. On multiple phone calls, plaintiff told his mother to send money to other inmates, to move money between accounts, and to create a power of attorney to assist with depositing and transferring his money. Mark Decl. Exs. G, I, and F. Finally, plaintiff's argument that he was giving his assets to his children is not credible, considering he stated in his IFP application he had no persons dependent on him for support. ECF No. 2.

In sum, the undisputed evidence demonstrates that plaintiff did not commit a minor misstatement or omission. Rather, he manipulated how he received and held his income in order to conceal it from the court. Accordingly, the court recommends dismissal of the case with prejudice. *See David,* 669 F. App'x at 795 (dishonesty and abuse of the IFP privilege warrant dismissal with prejudice).

**IV. Recommendation**

For the foregoing reasons, it is RECOMMENDED that:

1) Defendants' motion to dismiss with prejudice be GRANTED;
2) This action be DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(A) and the Clerk of Court be directed to administratively terminate all pending motions, including defendants' motion to stay (ECF No. 108). *See also* E.D.

Cal. L.R. 230(l).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Federal Rules Governing § 2255 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant). Dated: August 20, 2026

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE